IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FRIENDS OF THE WILD SWAN, *et al.*, | CV 12–59–M–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| VICKI CHRISTIANSEN, in her official capacity as Acting Regional Forester for the U.S. Forest Service, Region One *et al.*, | |
| Defendants. | |

Plaintiffs Friends of the Wild Swan and the Swan View Coalition filed a motion for a temporary restraining order and preliminary injunction in this case on June 21, 2013. Plaintiffs filed a nearly identical motion seeking a temporary restraining order and preliminary injunction in a related case, CV 12-29-M-DLC-JCL, on June 20, 2013. The motions request temporary injunctions of the Spotted Bear River (12-29) and Soldier Addition (12-59) logging projects on the South Fork of the Flathead River ("South Fork"). The parties filed cross-summary judgment motions in both cases, and those motions were referred to United States

1

Magistrate Judge Jeremiah C. Lynch for findings and recommendations. Judge Lynch has issued findings and recommendations in both cases, and recommends denying Plaintiffs' summary judgment motions in each case, granting Defendants' motions, and allowing the logging projects to proceed as scheduled.

Plaintiffs recently objected to the findings and recommendations and their objections closely mirror their TRO arguments. This Court has carefully reviewed the findings and recommendations in both cases. Plaintiffs' arguments in the present motion and in their objections raise only two new issues not already addressed by Judge Lynch. First, Plaintiffs argue Defendants violated their obligation to consider "connected actions", "cumulative actions", and "similar actions" under 40 C.F.R. § 1508.25(a)(2) when determining the scope of the EIS. Second, Plaintiffs argue this Court's decision in *Salix v. United States Forest Service*, 2013 WL 2099811 mandates that both projects be enjoined. The Court will address the first issue and Plaintiffs' NEPA and NFMA claims pursuant to the *Winter* preliminary injunction factors, while the second issue is governed by the preliminary injunction analysis outlined recently by this Court in *Alliance for the Wild Rockies v. Krueger*, 12-55-M-DLC (June 25, 2013)("*Krueger*").[1]

---

[1] Defendants argue the *Winter* factors apply to ESA claims and this Court erred in its contrary analysis in *Krueger*, citing *Conservation Cong. v. USFS*, 2013 WL 2631449 (9th Cir. June 13, 2013). While Defendants are correct that the Ninth Circuit did cite *Winter* in an ESA preliminary injunction case, the Court never reached the second step of irreparable harm nor did the Court

2

## I. TRO and Preliminary Injunction Standard

Issuance of a temporary restraining order, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving such a remedy is warranted by clear and convincing evidence. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A preliminary injunction is appropriate if Plaintiffs establish (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities tips in their favor; and (4) injunction serves the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).

The parties thoroughly analyze all of Plaintiffs' claims in their TRO arguments. However, this Court will only provide in-depth analysis of the issues not already reviewed by Judge Lynch for the first *Winter* factor because his recommendation dismissing Plaintiffs' claims serves as an indication that such claims fall short of the likelihood of success necessary to grant a TRO. Rather, Judge Lynch questioned the legal sufficiency of each of Plaintiffs' causes of action under NEPA, NFMA, and the ESA. While the Court will not adopt Judge Lynch's findings at this time, it has reviewed them carefully and finds that his analysis is sufficient to demonstrate that Plaintiffs cannot prove by clear and convincing

---

determine which party bears the burden to prove irreparable harm. Thus, *Conservation Cong.* is not directly contrary to this Court's analysis in *Krueger*.

evidence that they are likely to succeed on the merits of any of the claims raised in their summary judgment motion. Therefore, the Court will only squarely address Plaintiffs' claims raised for the first time in the TRO motion regarding likelihood of success. Plaintiff's objections to Judge Lynch's findings and recommendations will be addressed fully in a subsequent order under the applicable *de novo* standard.

Plaintiffs' arguments regarding Defendants' obligation to consider "connected actions", "cumulative actions", and "similar actions" under 40 C.F.R. § 1508.25(a)(2) when determining the scope of the EIS were not properly raised in their summary judgment motion.[2] This argument is different from Plaintiffs' arguments regarding cumulative effect s under 40 C.F.R. § 1508.7. Analysis pursuant to 40 C.F.R. § 1508.25(a)(2) determines the scope of all federal actions that need to be considered in an EA or EIS, instead of the analysis required within a single EA or EIS. Generally, district courts do not consider legal issues not initially raised in a party's summary judgment motion when ruling on findings and recommendations.

---

[2]Plaintiffs briefly mention 40 C.F.R. § 1508.25(a)(2) in their reply brief, but "legal issues raised for the first time in reply briefs are waived." *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). Plaintiffs' contention that they did not waive the argument because they did not find out about Tin Mule until after filing their original summary judgment brief is unavailing because the facts supporting their argument–the existence of the two projects on either side of the South Fork–existed well before that time.

"A district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation," but it "must actually exercise its discretion, rather than summarily accepting or denying the motion." *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). A district court is well within its discretion in barring arguments raised for the first time on objections to a magistrate's findings and recommendations absent exceptional circumstances. *Greenhow v. Secretary of Health & Human Services*, 863 F.2d 633, 638-39 (9th Cir. 1988) (*overruled on other grounds*). Plaintiffs provide no reason at all for failing to raise this issue in their summary judgment motion–let alone exceptional circumstances. No facts have changed nor was any new evidence presented that would excuse Plaintiffs from raising this argument in the first instance. "[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act." *Id.* at 638. Further, "the Magistrates Act was [not] intended to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." *Id.*

The Court recognizes that the new arguments are brought before it as a part of Plaintiffs' TRO motion, so the above-cited law relating to orders on findings

and recommendations does not appear directly applicable to this procedural standpoint. However, this TRO motion was filed after findings and recommendations have been issued on summary judgment–it is not a typical TRO motion filed at the beginning of a case. The TRO here seeks only to postpone the projects until the Court can rule on the findings and recommendations. The case law pertaining to orders on findings and recommendations thus applies in this instance. For these reasons, the Court will not address Plaintiffs' new legal arguments regarding 40 C.F.R. § 1508.25(a)(2). As this argument is the only one not already analyzed by Judge Lynch, the Court need not address the remaining *Winter* factors for Plaintiffs' NEPA and NFMA claims because they are not likely to succeed on the merits. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011). Despite this, the Court will briefly address the remaining factors as relates to Plaintiffs' NEPA and NFMA claims.

**Irreparable Harm**

Plaintiffs must prove that irreparable harm is likely, not only possible, in the absence of their requested relief to obtain a preliminary injunction post-*Winter*. *AWR v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Although Plaintiffs seek injunction of the entire Soldier Addition Project, Defendants' arguments primarily address the harm that will be suffered if only the Tin Mule sale and the Stony Hill

6

Communications Site Fuels Reduction ("Stony Hill")[3] are enjoined. Defendants' narrowing of the scope of the issues is appropriate in this case because the requested injunction was in response to Tin Mule's start date of July 5, 2013, and is to remain in effect only until the Court can fully rule on the merits of Plaintiff's objections to the findings and recommendations.

Plaintiffs do not show that irreparable harm is likely if Tin Mule is not enjoined. The harm Plaintiffs allegedly will suffer is their recreational enjoyment of mature and old growth forest stands. The Tin Mule project only implements a portion of the Soldier Addition Project, with the remainder of the Project finishing over the next several years. Plaintiffs fail to allege site-specific harms because none of the units identified as reducing hare habitat in multi-story mature forests are within the Tin Mule area. Further, the Spotted Bear District Ranger, Debra Mucklow Starling, asserts that Tin Mule does not treat old growth stands so it is difficult to see how its activities will irreparably harm Plaintiffs' alleged interests. As Defendants point out, timber cutting is not inherently damaging to forests and irreparable harm does not automatically arise from all environmental impacts caused by logging. *Earth Island Institute v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010).

---

[3] Plaintiffs clarify that they do not object to Stony Hill in their reply brief. (Doc. 49 at 11.)

Plaintiffs' claims that lynx and other wildlife and their habitat will be irreparably harmed absent injunction fails because none of the treatment units in Tin Mule are within designated lynx critical habitat. (Doc. 48 at 21.) Starling also states that none of the units are multi-storied mature snow-shoe hare habitat falling within Standard VEG S6. (Doc. 48-1 at 16.) Standard VEG S6 does not apply to these units, nor have Plaintiffs so argued. For these reasons, Plaintiffs have not established that irreparable harm is likely to occur absent enjoining of the Tin Mule ground-breaking activity prior to the Court's order on the parties' summary judgment motions.

**Balance of Equities and Public Interest**

While "the balance of harms will usually favor the issuance of an injunction to protect the environment," the law does not require abandonment of a balance of harms analysis just because a potential environmental injury is at issue. *Earth Island*, 626 F.3d at 475. Rather, courts must "balance all of the competing interests at stake" including potential economic harm to the government. *Id.*

Defendants argue the Project benefits the environment by opening up foraging areas, diminishing fire danger in priority areas, removing hazard trees, and reducing pine beetle infestation while minimizing impacts to endangered species and critical habitat. Defendants also point out that the Project provides a

significant economic benefit to the local economy, and delay of the project would result in increased fire danger in units adjacent to an airfield and a Forest Service communications center, as well as negatively impact local sawmill operators. Plaintiffs respond that they only seek delay on the Project until they can ensure compliance with federal law, and such compliance is in the public interest. Plaintiffs state that Defendants decided to award a contract for the Project well after filing of the complaint in this matter, so they essentially assumed the risk of any economic impacts. Plaintiffs challenge the Starling affidavit as a highly speculative extra-record declaration that is not based on any evidence, and argue the Project is not as time-sensitive as Defendants would have the Court believe.

As in *Earth Institute*, the balance of equities and public interest considerations here weigh in favor of Defendants. The Project will reduce both the likelihood and severity of forest fires in the area, thus protecting the many governmental buildings and facilities located in the Wildland Urban Interface. The Project will remove mountain pine beetle breeding ground and hazard trees. Enjoining the Tin Mule sale will negatively affect the local economy, which is reliant on the timber industry. Defendants point to many negative effects a delay would have on the Project including increased wildfire danger, loss of timber value, and the layoff of 120 employees at the sawmill company servicing the

9

Project. The temporary delay Plaintiffs seek will actually have significant consequences on the Project. Judge Lynch has recommended denial of all Plaintiffs' claims, finding the Project does not pose the severe environmental threat Plaintiffs allege. The balance of equities and public interest considerations weigh in favor of Defendants in this case. The Plaintiffs therefore do not meet any of the four factors required for a TRO or preliminary injunction regarding their NEPA and NFMA claims.

## II. TRO and Preliminary Injunction Standard for ESA Claims

The traditional preliminary injunction analysis does not apply to injunctions sought pursuant to the ESA. "In cases involving the ESA, Congress removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing interests." *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1510 (9th Cir.1994) (citing *Friends of the Earth v. United States Navy*, 841 F.2d 927, 933 (9th Cir.1988)). Congress has determined that under the ESA, the balance of hardships always sharply favors the endangered or threatened species. *Id.*; see also *Marbled Murrelet v. Babbitt,* 83 F.3d 1068, 1073 (9th Cir.1996). The preliminary injunction standard for ESA cases is more liberal than the traditional standard, but that does not mean that an injunction should issue for every ESA violation. See *Burlington N.*, 23 F.3d at 1511.

Plaintiffs argue *Salix* requires injunction of the Spotted Bear Project because consultation on lynx critical habitat for both projects impermissibly relied upon the 2007 Northern Rockies Lynx Amendment ("Lynx Amendment") standards, particularly the VEG S6 standards. Defendants respond that Plaintiffs' arguments fail for four reasons. First, *Salix* is irrelevant to the Tin Mule sale because the ten treatment units included in the Tin Mule sale are not within any designated lynx critical habitat. Second, Defendants assert Standard VEG S6 does not apply to the ten units, so there can be no irreparable harm based on flawed consultation of lynx critical habitat. Third, Defendants argue Plaintiffs waived their argument regarding the Lynx Amendment because they never raised it in their summary judgment briefs nor in their 60-day notice. Finally, Defendants contend Plaintiffs' *Salix*-based arguments fail on the merits.

The Court will first address Defendants' argument that Plaintiffs waived their arguments regarding *Salix* by failing to raise the issue in their 60-day notice and in their summary judgment motion, since the resolution of this issue is dispositive.

**60-Day Notice Requirement**

A citizen suit under the ESA may not be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any

alleged violator." 16 U.S.C. § 1540(g)(2)(A)(i). "The purpose of the 60-day notice provision is to put the agencies on notice of a perceived violation of the statute and an intent to sue." *S.W. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). Failure to strictly comply with the notice requirement serves as an absolute bar to filing suit under the ESA. *Id.* The notice must provide sufficient detail "so that the Secretary or [alleged violator can] identify and attempt to abate the violation." *Id.* at 522. Otherwise, courts lack jurisdiction to consider the case. *Id.* at 520; 16 U.S.C. § 1540(g)(3)(A).

Plaintiffs' arguments regarding *Salix* fail because they have not satisfied the 60-day notice provision required by 16 U.S.C. § 1540(g)(2)(A)(i). Defendants raised this defense in their response to the TRO motion. Plaintiffs do not refute this argument because they did not raise the Lynx Amendment issue raised by the plaintiffs in *Salix* in their 60-day notice. Plaintiffs admit in their reply brief that "it is correct that Plaintiffs are not challenging the Lynx Amendment on its own, i.e., not challenging the Service's and FWS's failure to reinitiate consultation on the Lynx Amendment." (Doc. 49 at 9.) This Court therefore lacks jurisdiction to address Plaintiffs' arguments regarding the effects of *Salix* on the two challenged projects until the required 60-day notice has been given.

Plaintiffs also failed to raise these arguments in their summary judgment

motion, and have thus waived them as discussed prior regarding Plaintiffs' 40 C.F.R. § 1508.25(a)(2) argument.

### III. Conclusion

Regarding Plaintiffs' NEPA and NFMA claims, Plaintiffs have not met their burden to show they are likely to succeed on the merits, they will suffer irreparable harm absent their requested relief, and the balance of equities and public interest considerations weigh in their favor. Plaintiffs' attempt to enjoin the Tin Mule sale portion of the Project pending a final decision from this Court based on *Salix* fails because Plaintiffs did not provide the required 60-day notice of intent to sue under the ESA. Plaintiffs' TRO motion will therefore be denied.

IT IS ORDERED that Plaintiffs' motion for temporary restraining order and preliminary injunction (doc. 43) is DENIED.

Dated this 8th day of July, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court